## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CAMILA MARDONES AND MAURICIO FERNÁNDEZ | CIVIL NO.: 22-1431 |
| Plaintiffs | |
| v. | Re.: TORT; PERSONAL INJURY |
| LEVIMAR GUESTHOUSE, INC.; MAPFRE PRAICO INSURANCE COMPANY; JOHN DOE; JANE ROE; CORPORATION X; AND INSURANCE COMPANIES A & B | **JURY TRIAL REQUESTED** |
| Defendants | |

## COMPLAINT

**COME NOW** Plaintiffs, Camila Mardones ("Camila") and Mauricio Fernández ("Mauricio"), through the undersigned attorney, and respectfully state and pray as follows:

## I.    INTRODUCTION

1. This suit is the story of a dream vacation turned into a never-ending nightmare for Camila and Mauricio, a young Chilean couple traveling around Puerto Rico this past spring.

2. An inherently dangerous stairway; a missing handrail; slippery tile with no anti slip strips; and a wet floor without a visible wet-floor sign—a fatal combination for Camila, who fell landing on her right ankle, and it shattered into pieces.

3. Due to the fall, Camila suffered an extremely dangerous compounded fracture and had to return to Chile with Mauricio on an emergency basis.

4.  Back in Chile, Camila immediately underwent a four-hour reconstructive surgery, where surgeons inserted a metal plate and eight titanium screws into her ankle to rejoin the broken bones, which hopefully will allow Camila to again walk unaided and pain free.

5.  Almost six months have gone by after the surgery, but Camila has yet to regain her ability to walk around unaided and pain free, despite dozens of physical therapy sessions and a myriad of complementary medical services.

6.  Camila is slated for a second surgery this September, and her doctors are still unable to determine whether Camila will walk unaided and pain free ever again.

7.  This diversity-tort suit seeks redress for all the damages negligently caused to Camila and Mauricio.  Additional details of their story follow next.

## II.  JURISDICTION AND VENUE

8.  This Honorable Court has jurisdiction to entertain this case pursuant to 28 U.S.C. § 1332(a)(2), as there is complete diversity between Camila and Mauricio, who are Chilean citizens and permanently reside in Chile, and codefendants, who are incorporated in Puerto Rico and operate their respective businesses in this jurisdiction.

9.  The relief requested in this case exceeds the jurisdictional amount of $75,000, exclusive of interests and costs.

10. Pursuant to 28 U.S.C. § 1391 (b)(2), venue is proper in this Honorable Court because the negligent acts and omissions giving rise to this suit happened in Puerto Rico.

### III.   THE PARTIES

11. Camila was born in Chile 32 year ago. She is a citizen and permanent resident of Chile.  Camila graduated from the University of Andreo Bello in Chile with a degree in social work. Since 2021, Camila has worked as the purchasing agent in Mauricio's company.

12. Mauricio is also a natural of Chile. He is a 34-year-old citizen and permanent resident of Chile. Mauricio is professionally trained as an engineer, and for the last six years has successfully owned and operated an importing and distribution company in the agricultural industry of Chile and its neighboring countries.

13. Camila and Mauricio's permanent address is Roberto Matta 1932, Peñaflor, Santiago, Chile.

14. Camila and Mauricio have been committed to each other in a serious relationship since 2016.

15. Among many other things, Camila and Mauricio enjoy traveling the world together, immersing themselves in other cultures, and learning how people around the globe go about everyday life. Over their travels together, Camila and

Mauricio have developed an unbreakable bond, which both very much cherish and nurture.

16. Co-defendant Levimar Guesthouse, Inc. ("Levimar") is a for profit corporation organized under the laws of Puerto Rico.

17. Levimar operates a two-story, beachfront hotel at the following address: Marginal 2888, Levittown, Toa Baja, PR, 00949.

18. Mapfre Praico Insurance Company ("Mapfre") is an insurance company organized under the laws of Puerto Rico.

19. Mapfre issued policy number 1100218002321, with a policy limit of $1,000,000, on behalf of Levimar, and said policy covers the damages claimed in this suit.

20. John Roe and Jane Doe are fictitious names given to unknown defendants whose negligent actions and omissions may have caused the damages claimed in this suit.

21. Corporation X is the fictitious name given to the unknown entity that employed the employees, agents, administrators, owners, directors, or subcontractors whose negligence may have caused the damages at issue in this case.

22. Insurance Companies A and B are the fictitious names given to the unknown insurance companies that provided insurance policies for the above unknown codefendants. Those insurance policies provide coverage for the damages claimed in this suit.

4

## IV.   THE FACTS

### A. CAMILA AND MAURICIO COME TO PUERTO RICO

23. Camila and Mauricio planned their Puerto Rico vacation with much expectation and excitement.  Neither had been to the Caribbean and both believed the Island would be a romantic getaway for them to unwind and continue making memories together.

24. The first days in Puerto Rico surpassed Camila and Mauricio's expectations. The couple traveled around the Island, enjoyed the beaches, the food, and, most of all, the people.

25. However, it all changed in the blink of an eye.

### B. A NEVER-ENDING NIGHTMARE BEGINS TO UNFOLD

26. On March 28, 2022, Camila and Mauricio woke up early in the morning eager to embark in a one-day trip they had booked to Culebra Island.

27. Mauricio left their second-story room in Levimar first, as he wanted to start the car and have everything already packed so that Camila would not have to wait at Levimar's parking lot.

28. Shortly thereafter, Camila closed the door of their room and walked towards Levimar's stairway (there is no public elevator in the building) to go meet Mauricio.  Unbeknown to Camila all hell was about to break lose.

### C. LEVIMAR'S INHERENTLY DANGEROUS STAIRWAY

5

29. Levimar's stairway is inherently dangerous, as shown in the picture below, which was taken by Levimar's surveillance cameras right before Camila began the descend that would mark a before and after in both, her life and Mauricio's:



30. Levimar's stairway has about 14 cement steps, each covered with polished ceramic tile.

31. There are no anti slip strips on any of the 14 steps, nor at the landing spot at the bottom of the stairway.

32. There is one handrail at the right side of the stairway, none in the left side.

33. Although Camila is unaware at the moment, the last step of the stairway is wet.

34. There is no "Wet Floor" sign at the top of the stairway.

35. From the top of the stairway, no "Wet Floor" sign can be seen at the bottom.

36. And Camila begins walking down the stairway without knowing that disaster awaits below.

### D. CAMILA LOSES HER FOOTING ON WET FLOOR AND SHATTERS HER RIGHT ANKLE

37. As bound to happen, when Camila reaches the last step at the bottom of the stairway, she loses her footing on the wet floor and falls with her full body coming down at a slant angle, while her legs separate in a split; the left leg facing forward (out of control because of the loss of balance), while her right leg lands stretched out to the back of the body.

38. Camila's ankle instantly shatters into pieces. Camila's right toes are now facing where her heel is supposed to be, and she completely loses her ability to move her right foot.

39. The most intense pain Camila has ever felt rushes through her whole body, and she cannot stop the uncontrollable screams coming out of her soul.

40. The following picture, also taken by Levimar's surveillance cameras, speaks a thousand words and provides a glimpse of what Camila had to endure at the bottom of Levimar's wet stairway:



### E. MAURICIO'S WORLD COMES CRASHING DOWN WHEN HE HEARS AND SEES CAMILA IN DESPAIR

41. At the parking lot, Mauricio hears someone screaming, but initially does not know it is Camila.

42. Mauricio's world comes crashing down when he sees Camila on the floor, screaming uncontrollably and crying out of pain.

43. Mauricio does not know what to do or who to call here in Puerto Rico. No one from Levimar is there to help.

44. Eventually a passerby comes to help Mauricio, and 911 is called.  The paramedics arrive in about 20 minutes. They decide to take Camila to Centro Médico in Río Piedras. Unaware of the alternatives, Mauricio can only acquiesce. He boards the passenger seat of the ambulance, while Camila's cries of pain make him unable to hold back the tears of desperation and frustration pouring out of his eyes.

### F. CAMILA NEEDS EMERGENCY SURGERY TO AVOID AMPUTATION

45. At Centro Médico, doctors tell Camila and Mauricio that an immediate reconstructive surgery is needed, or Camila's right foot would need amputation.

46. Doctors also inform Camila and Mauricio that surgery would entail a prolonged recovery in Puerto Rico, without Camila being able to immediately fly back to Chile.

47. Camila and Mauricio lack medical insurance coverage in Puerto Rico for the type of surgery that is necessary to save Camila's foot. Nor do they have the

9

resources needed to stay in Puerto Rico for an extended period. They thus ask if it is medically feasible to return to Chile and have the surgery there.

48.  Although time is of the essence, the doctors clear Camila to fly back home. Her right foot is forced back into place and temporarily immobilized with a plaster cast.

### G. CAMILA AND MAURICIO MOVE HEAVEN AND EARTH TO GET BACK TO CHILE

49. After a logistical nightmare, Camila and Mauricio manage to book a flight out of Puerto Rico for the next day. When they begin to board the plane, however, a flight attendant refuses to let them in because Camila's cast has been in place for less than 24 hours.

50. Camila and Mauricio lose the flight and return to Centro Médico to get a medical certificate indicating that Camila can safely fly with the cast.

51. Camila and Mauricio struggle to find lodging, but at the last minute manage to book a room in the airport's hotel.

52. On March 30, 2022, Camila and Mauricio are finally able to leave Puerto Rico.  They arrive to Chile a day after and go directly to the hospital where doctors already await Camila for surgery.

**H. CAMILA UNDERGOES SURGERY BUT THERE IS NO GUARANTEE OF A FULL RECOVERY**

53. To stabilize Camila's right ankle and allow her broken bones to rejoin, surgeons insert a metal plate and eight titanium screws into Camila's ankle, as depicted in the following X-Ray:



54. After surgery, doctors tell Camila that she must remain in bed for at least 30 days, without putting any weight on her right foot.

55. Camila is also told that she would have to endure a physical therapy regime that requires numerous visits to specialists, physical therapists, clinics and the hospital.

56. Worse of all, Camila is appraised that there is no guarantee that she would aver regain her ability to walk unaided and pain free and that she most likely would need additional surgeries.

### III. DAMAGES

#### A. SPECIAL DAMAGES

57. All the allegations stated above are incorporated and realleged below.

58. Due to the negligent actions and omissions of codefendants, Camila and Mauricio had to pay out of pocket for traveling and lodging, medical expenses, medical treatments, physical therapy, healthcare equipment and medications.

59. Camila has also missed work for a significant period.

60. As of today, Camila and Mauricio's special damages easily exceed $20,000.

61. Codefendants are jointly and severally liable for those special damages as well as for all other damages claimed in this suit.

#### B. GENERAL DAMAGES

62. All the allegations stated above are incorporated and realleged below.

63. Due to the negligent actions and omissions of codefendants, Camila suffered, continues to suffer and will suffer the physical pain associated with broken bones, surgeries, physical therapy, and a prolonged recovery process.

64. Also, both Camila and Mauricio have suffered and continue to suffer significant emotional pain, distress, uncertainty, fear, loss of consortium, and anguish due to codefendants' negligent actions and omissions. Each has witnessed the other physical and emotional suffering through the injury and the recovery process, which, in turn, has magnified their emotional despair.

65. Camila and Mauricio's daily routine, their activities both individually and as a couple, as well as their plans have been disrupted due to codefendants' negligent actions and omissions. The disruption has caused and continues to cause distress, uncertainty, stress and emotional pain.

66. The couple lives tormented by the real possibility that Camila may never regain her ability to walk unaided, free of pain.

67. In addition, Camila has developed PTSD-like symptoms and an unusual aversion/phobia to stairways, which has prompted her to seek professional help.

## V.   CAUSES OF ACTION

### A. FIRST CAUSE OF ACTION: PREMISE LIABILITY UNDER PUERTO RICO'S GENERAL TORT STATUTE

68. All the allegations stated above are incorporated and realleged below.

69. Under the Puerto Rico Civil Code, applicable in this case pursuant to Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), all codefendants are jointly and severally

liable for the negligent acts and omissions that caused Camila and Mauricio's damages.

70. Had codefendants properly designed, constructed and/or upkept Levimar's premises, Camila and Mauricio would not have suffered the damages claimed in this case.

71. Had codefendants installed the necessary anti slip strips and/or a handrail in the left side of Levimar's stairway, as well as complied with the applicable laws and regulations in that regard, Camila and Mauricio would not have suffered the damages claimed in this case.

72. Had codefendants properly maintained and operated Levimar premises to avoid the bottom of Levimar's stairway from becoming wet, Camila and Mauricio would not have suffered the damages claimed in this case.

73. Had codefendants dried the wet steps of Levimar's stairway, Camila and Mauricio would not have suffered the damages claimed in this case.

74. Had codefendants placed signage at the top of the stairway and/or otherwise apprised Camila that the last step and landing spot of the stairway were wet, Camila and Mauricio would not have suffered the damages claimed in this case.

75. Had codefendants placed signage at the bottom of the stairway, visible from the top of the stairway, and/or otherwise apprised Camila that the last step and landing spot of the stairway were wet, Camila and Mauricio would not have suffered the damages claimed in this case.

14

76. Had codefendants complied with their duty to keep Levimar's premises safe and secured for the safe and secured enjoyment of their guests, Camila and Mauricio would not have suffered the damages claimed in this case.

77. Under the Puerto Rico Civil Code, codefendants are jointly liable for the negligent acts and omissions that caused Camila and Mauricio's damages.

78. Under the insurance policies in effect when the negligent acts and omissions alleged in this case happened, codefendants' insurance providers are liable for the damages claimed in the Complaint.

### B. SECOND CAUSE OF ACTION: DIRECT AND INDEPENDENT LIABILITY UNDER MAPFRE'S INSURANCE POLICY AND PUERTO RICO'S DIRECT ACTION STATUTE

79. All the allegations stated above are incorporated and realleged below.

80. As alleged above, Mapfre issued an insurance policy to Levimar covering the damages claimed in this suit.  The policy has a $1,000,000 liability limit and was in full force and effect when Camila fell at Levimar's inherently dangerous stairway due to codefendants' negligent actions and omissions.

81. Under Puerto Rico's Direct Action Statute, as codified in the Puerto Rico Insurance Code, Mapfre is liable directly and independently for the damages caused to Camila and Mauricio.

## VI.   JURY TRIAL REQUESTED

82. Jury trial is respectfully requested as to all triable issues.

## VII.   PRAYER FOR RELIEF

83. The damages codefendants negligently caused to Camila and Mauricio far exceed the jurisdictional amount of $75,000.  Compensation in excess of that amount is respectfully requested, as may be awarded by a jury at trial.  Punitive damages under the Puerto Rico Civil Code are also warranted.

84. In the event that codefendants deny their liability for the negligent acts and omissions giving rise to the claims set forth in this suit as well as for the resulting damages, the imposition of pre-judgment and post-judgment interest and attorney's fees at the maximum rate allowed by law are being requested.

**WHEREFORE**, Camila and Mauricio demand judgment against codefendants, jointly and severally for an amount in excess of $75,0000 to be determined by a jury at trial, which will include special, compensatory and punitive damages, costs, attorney's fees and all other applicable relief.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 7th day of September 2022.

> **PRV LAW OFFICE**
> 221 Plaza, Sixth Floor
> Ponce de León Ave. 221
> San Juan, P.R. 00917
> www.prvlaw.com
> c. 787-299-5118
>
>
>
> s/Paúl A. Rodríguez Vélez
> Paúl A. Rodríguez Vélez
> RUA 17,386
> prodriguez@prvlaw.com

17