IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CAMILA MARDONES, et al., | |
| Plaintiffs, | |
| v. | CIVIL NO.: 22-1431 (MEL) |
| LEVIMAR GUESTHOUSE, INC., et al., | |
| Defendants. | |

**OPINION & ORDER**

I. **INTRODUCTION**

Pending before the court is Levimar Guesthouse, Inc. ("Levimar") and MAPRE PRAICO Insurance Company's (collectively "Defendants") motion for summary judgment, arguing that Ms. Camila Mardones and Mauricio Fernández's (collectively "Plaintiffs") evidence is insufficient to survive a motion for summary judgment. ECF No. 22 at 2. Plaintiffs responded on August 5, 2023, and Defendants replied on August 14, 2023. ECF Nos. 36, 41. For the reasons set forth below, Defendants' motion for summary judgment is DENIED.

On September 7, 2022, Plaintiffs filed suit against Defendants, alleging premise liability under Puerto Rico's general tort statute. ECF No. 1 at 13–15; 31 L.P.R.A. § 10801. Specifically, Plaintiffs claim that Defendants failed to design, construct, and maintain Levimar's stairway safely, which led to the incident causing Ms. Mardones's injury, and that Defendants failed to adequately warn Plaintiffs regarding the dangerous conditions on the stairway. ECF No. 1 at 13–15. Additionally, Plaintiffs seek to hold MAPFRE PRAICO Insurance Company directly and independently liable under Puerto Rico's Direct-Action Statute. ECF No. 1 at 15; 31 L.P.R.A. § 2003.

**II.     LEGAL STANDARD**

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992) (citations omitted). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 (1st Cir. 2011) (quoting *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp.*, 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, the party cannot merely "rely on an absence of competent evidence, but must affirmatively point to specific facts [in the record] that demonstrate the existence of an authentic dispute." *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995) (citation omitted). The party need not, however, "rely only on *uncontradicted* evidence . . . . So long as the [party]'s evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine

which version of the facts is most compelling." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original) (citation omitted).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan*, 904 F.2d at 115. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. P. R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

### III. MATERIAL FACTS NOT IN CONTROVERSY

On March 28, 2022—the day of the incident at issue in this case—Ms. Mardones was in Puerto Rico on vacation and stayed at Levimar. ECF No. 24 at 2, ¶¶ 5–6; ECF No. 34 at 1, ¶ 3. Levimar is owned by Mr. Jesús Luna and managed by Ms. Mayra Jiménez. ECF No. 35 at 1, ¶¶ 1–2; ECF No. 40 at 1, ¶¶ 1–2. On the day of the incident, Levimar's stairway had only one handrail and no anti-slip thread tape. ECF No. 24 at 2, ¶¶ 7–8; ECF No. 34 at 1–2, ¶¶ 4–5. However, there was a yellow caution sign located at the bottom of the stairway. ECF No. 24 at 2, ¶ 9; ECF No. 34 at 2, ¶ 6. On March 28, 2022, around 5:27 a.m., Ms. Mardones closed her room's front door and walked to the stairway. ECF No. 24 at 2, ¶ 10; ECF No. 34 at 2, ¶ 7. Immediately after, Ms. Mardones went down the stairs, holding her phone with her right hand, her purse and other personal belongings on her right shoulder, and her dress with her left hand. ECF No. 24 at 3, ¶¶ 12–13; ECF No. 34 at 2, ¶ 9. Furthermore, Ms. Mardones did not use the

handrail while going down the stairs. ECF No. 24 at 3, ¶ 14; ECF No. 34 at 2, ¶ 10. While using Levimar's stairway, Ms. Mardones fell. ECF No. 24 at 3, ¶ 15; ECF No. 34 at 2, ¶ 11. On the particular step where the incident occurred, there was no handrail. ECF No. 35 at 2, ¶ 13; ECF No. 40 at 3, ¶ 14. Mr. Luna began his shift the morning of the incident and was the only employee present at Levimar when Ms. Mardones fell. ECF No. 35 at 1, ¶¶ 3–4; ECF No. 40 at 1, ¶¶ 3–4. Before the incident, no Levimar staff mopped the stairway that morning. ECF No. 35 at 2, ¶ 7; ECF No. 40 at 2, ¶ 7.

## IV. ANALYSIS

Defendants move for summary judgment on Plaintiffs' Puerto Rico law tort claim on essentially three grounds. First, Defendants argue that the sole cause Ms. Mardones's fall was her own negligence. Second, Defendants assert that there is no evidence that the stairway was left in a dangerous condition about which Defendants had actual or constructive knowledge. Specifically, Defendants contend that the stairway where the incident occurred was not wet and that the caution sign at the bottom of the stairway was visible. *Id*. Third, Defendants claim that Plaintiffs have failed to produce evidence showing that Levimar's stairway was negligently designed. ECF No. 22 at 11–18.

Puerto Rico's general tort statute provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 31 L.P.R.A. § 10801. To establish tort liability, a Plaintiff must demonstrate three elements: "(1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." *Vázquez Filippetti v. Banco*

4

*Popular de P.R.*, 504 F.3d 43, 49 (1st Cir. 2007) (citing *Torres v. KMart Corp.*, 233 F. Supp. 2d 273, 277–78 (D.P.R. 2002)).

    A. **Whether Ms. Mardones was negligent and therefore contributed to her injury is a question left for the jury.**

Defendants contend that they are entitled to summary judgment because as a matter of law "the exclusive and proximate cause of the incident was [Ms. Mardones's] gross negligence, reckless disregard and/or fault." ECF No. 22 at 8. However, as discussed in the following sections, there is sufficient evidence for a jury to find that Levimar was negligent. When evidence has been presented that a defendant's negligence proximately caused plaintiff's injuries, a plaintiff's degree of fault for her own injury is an issue to be resolved by a jury. *Ayala Martínez v. Puerto Rico CVS Pharmacy, LLC.*, No. CV 19-2098, 2022 WL 1289356, at *4 (D.P.R. Apr. 29, 2022) ("It must be left to a jury at trial to determine to what degree, if any, Plaintiff was responsible for her own injuries. . . , and thus, as a matter of law, summary judgment cannot be granted based on the argument that Plaintiff's own negligence caused her fall."). Although based on the video recorded evidence a reasonable jury could well find that Ms. Mardones was distracted or that her injury could have been prevented to some extent had her right hand been free, it would be inappropriate for the court to weigh such evidence for purposes of ruling on the pending motion for summary judgment.

    B. **There is a genuine dispute of material fact as to whether there existed a dangerous condition about which Defendants had knowledge.**

Defendants assert that Plaintiffs failed to provide evidence that a dangerous condition existed about which Defendants had knowledge. ECF No. 22 at 19. Under Puerto Rico law, the owner of a commercial establishment is only liable for damages due to negligence on his premises "as a result of those hazardous conditions *which are known by* [the owner] *or when*

*their knowledge is imputable.*" *Ramos Rosado v. Wal-Mart Stores Inc.*, 165 D.P.R. 510, 513 (2005). Accordingly, to impose premises liability, "the plaintiffs must prove—and the courts have to determine—in the first place, if a hazardous condition existed and, second, if the existence of such condition was of the knowledge of the defendant or if it could be imputed such knowledge." *Id.* at 514 (emphasis omitted). If a plaintiff succeeds in showing that a dangerous condition existed on the premises, then plaintiff must show that the defendant either had "actual" or "constructive" knowledge of the dangerous condition. *Velázquez v. Puerto Rico Ports Authority*, 2009 WL 10717754, at *4 (D.P.R. Feb. 18, 2009); *Cotto v. C.M. Ins. Co.*, 116 D.P.R. 644, 650 (1985) ("[W]e fixed liability because they involved *existing dangerous conditions* within the business premises in question, which conditions *were known to the owners or should have been known to them*.").

In order to show constructive knowledge (knowledge 'imputable' to the defendant), "a plaintiff must prove either the existence of the dangerous condition for an unreasonable or excessive length of time or, in the absence of evidence regarding time, the owner's insufficient prevention policy or failure to implement the policy." *Carlo Blanco v. Inmobiliaria Comercial, Inc.*, 59 F. Supp. 3d 399, 403 (D.P.R. 2014) (citing *Ramos Rosado*, 165 D.P.R. at 513–15). If the alleged dangerous condition is permanent, "the question then becomes whether defendants implemented a sufficient prevention policy or exercised reasonable care to forewarn visitors of the hazard." *Robles v. Pablo Fajardo*, 2016 WL 2637814, at *2 (D.P.R. May 6, 2016) (citing *Márquez v. Casa de España de Puerto Rico*, 59 F. Supp. 3d 409, 414 (D.P.R. 2014)).

   1. **A material factual controversy exists as to whether the stairway was wet when the incident occurred.**

Neither party disputes whether a wet stairway is a dangerous condition but only whether the stairway was wet when the incident occurred. ECF No. 22 at 19; ECF No. 36 at 5, 8–9.

Defendants claim that Plaintiffs have produced no evidence showing that the floor was wet. ECF No. 22 at 19. However, this statement ignores deposition testimony by Ms. Mardones stating that she fell on a wet stairway. ECF No. 34-4 at 68, ¶¶ 1–21. Additionally, it is undisputed that there was a yellow caution sign at the bottom of the stairway where the incident occurred. ECF No. 24 at 2, ¶ 9; ECF No. 34 at 2, ¶ 6. Viewing this fact in the light most favorable to Plaintiffs, it could be reasonably inferred that the caution sign was placed at the bottom of the stairway because the stairway was indeed wet. Alternatively, Defendants cite to Mr. Luna's testimony that, upon visual inspection the morning of the incident, the stairway was dry. ECF No. 35-1 at 89, ¶¶ 7–20. In addition, video recorded evidence does *not* make it readily apparent that the steps of the stairway were wet. *See* ECF No. 24 at 4, ¶ 21 (Exhibits VII, VIII). Both parties have cited evidence whereby a reasonable jury could find either that the floor was wet or dry. To grant summary judgment on these facts would require this court to assess the credibility of Ms. Mardones and Mr. Luna, as well as the other pieces of evidence mentioned above. Because credibility determinations are in the purview of the jury—not a court on a motion for summary judgment—this question should be submitted to the jury. *Greenburg*, 835 F.2d at 936 ("The precincts patrolled by Rule 56 admit of no room for credibility determinations. . . .").

   2. **A genuine dispute of material fact exists as to whether caution warnings were visible before the incident.**

It is uncontested that there was a yellow caution sign at the bottom of Levimar's stairway. ECF No. 24 at 2, ¶ 9; ECF No. 34 at 2, ¶ 6. However, the parties dispute whether Ms. Mardones could see any caution warnings before the incident occurred. ECF No. 35 at 2, ¶ 12; ECF No. 40 at 3, ¶ 13. Ms. Mardones testified that she did not see a caution sign at the end of the stairs. ECF No. 34-4 at 60, ¶¶ 2–5. In response, Defendants point to video footage capturing the incident, arguing that "[i]f Ms. Mardones did not see the 'caution' sign it was because she was looking to

her right before she fell." ECF No. 40 at 3, ¶ 13. The video recording shows Ms. Mardones exit her room, traverse the stairs, and eventually fall at the bottom of the stairs near the yellow caution sign. ECF No. 24 at 4, ¶ 21 (Exhibits VII, VIII). However, the video recording also shows the yellow caution sign oriented toward an angle away from the staircase, making it possible that patrons walking down the stairway would not be able to see the caution warnings. ECF No. 24 at 4, ¶ 21 (Exhibit VIII).

Accordingly, a reasonable jury could conclude that Ms. Mardones saw or should have seen caution warnings before she fell because of her proximity to the caution sign right before the fall or agree with Defendants' contention that she did not notice the sign because she was distracted. Alternatively, a reasonable jury could also accept Ms. Mardones's testimony and interpret the video footage—because of the caution sign's angle positioning—to conclude that Ms. Mardones did not see and could not have reasonably seen the caution warnings before the incident. Therefore, this question should be submitted to the jury. These two genuine disputes of material facts, taken alone, are enough to deny Defendants' motion for summary judgment. Nevertheless, the court now turns to Defendants' negligent design argument.

C. **Plaintiffs have presented sufficient evidence to preclude summary judgment on the negligent design claim.**

Finally, Defendants, embedding several *Daubert* arguments into their motion to dismiss, contend that Plaintiffs have failed to provide sufficient evidence regarding whether Levimar's stairway was negligently designed and therefore inherently dangerous. ECF No. 22 at 11–18; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Specifically, Defendants contend that Plaintiffs provide no evidence that the stairway was inherently dangerous because it was missing handrails and anti-slip strips on the date of the incident. ECF No. 22 at 11–18.

In contrast to a suit alleging that business premises were negligently maintained, a suit claiming negligent design asserts that the property was negligently designed "from its very conception—as the owner intended it to be." *Márquez*, 59 F. Supp. 3d at 414–15 (D.P.R. 2014) (citing *Vázquez Filippetti*, 504 F.3d at 50–51). If the nature of the design is "beyond the common experience or knowledge of an average lay person" the plaintiff must usually present expert testimony establishing "the relevant standard of care for the design and the way(s) in which the defendant's design fell below that standard." *Vázquez Filippetti*, 504 F.3d at 54.

Here, Plaintiffs have provided sufficient evidence in the form of an expert report by Architect Alexandra Betancourt to defeat Defendants' motion for summary judgment. ECF No. 34-1. Architect Betancourt concluded that Levimar's stairway did not comply with applicable building codes because "the overall different rise heights, the few steps which have different heights and lengths in its form, the landing distance, the handrail deficiencies, and the floor finish at the time of the fall." ECF No. 34-1 at 11. Specifically, as to the floor finish, Architect Betancourt found that the stairway had "smooth polished ceramic title" and that "slip-resistant tape . . . [is] required when the tile is not slip resistant." ECF No. 34-1 at 10. Yet, on the date of the incident, none of the steps had slip-resistant tape. ECF No. 34-1 at 10. Accordingly, a reasonable jury could conclude that Levimar's stairway effectively violated applicable building codes because it lacked anti-slip strips.

Defendants challenge Architect Betancourt's report on several *Daubert* grounds, arguing that Architect Betancourt lacks experience and that her expert report falls short because it does not identify the standards that support her conclusions, it does not apply the standards to the facts of the case, and it omits discussion of the basis for her opinions. ECF No. 22 at 13. In *Daubert*, the Supreme Court "vested in trial judges a gatekeeper function, requiring that they assess

9

proffered expert scientific testimony for reliability before admitting it." *Milward v. Acuity Specialty Prod. Grp., Inc.*, 639 F.3d 11, 14 (1st Cir. 2011). Rule 702 of the Federal Rules of Evidence was amended to reflect the Supreme Court's decision in *Daubert*. Fed. R. Evid. 702 advisory committee's note to 2000 Amendments ("Rule 702 has been amended in response to [*Daubert*], and to the many cases applying *Daubert*, including [*Kumho*, 526 U.S. 137 (1999)]."). Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(a)–(d). For an expert opinion to be admissible, it must be relevant under Federal Rule of Evidence 402, and also must meet the "special relevancy requirement" in the "incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue[.]" *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998).

First, Defendants claim that Architect Betancourt lacks required experience because she is unable to produce any work without the help of other professionals. ECF No. 22 at 13. Essentially, Defendants imply that Architect Betancourt is a novice in her field without a track record of her own. However, even if Defendants' assertion was true, this is an issue of weight that will be addressed by the jury when listening to Architect Betancourt's testimony, not an issue of admissibility. A jury may decide to discredit Architect Betancourt's testimony because of her lack of experience, or it may not.

Second, Defendants contend that Architect Betancourt cannot be qualified as a forensic expert, accident reconstruction expert, or a biomechanics expert. ECF No. 22 at 13. Agreed. Architect Betancourt will not be admitted at trial as an expert in any of those fields. The mere fact that Architect Betancourt is not an expert in those specific fields, however, does not mean that she cannot be considered an expert in construction design to evaluate whether a structure lacks compliance with applicable building codes and constitutes a safety hazard. Indeed, her report—as will be her testimony at trial—is limited toward evaluating Levimar's stairway, identifying whether the stairway complied with applicable building codes on the day of the incident, and opining whether that the stairway was inherently dangerous because it was noncompliant with applicable building codes. Whether the stairway's shortcomings addressed in Architect Betancourt's report caused Ms. Mardones's fall, however, is not something that Architect Betancourt will be allowed to testify at trial. In the end, the jury will have to draw reasonable inferences from the evidence admitted at trial.

Third, Defendants argue that Architect Betancourt's report is inadequate in that it fails to identify the standards that support her conclusions. ECF No. 22 at 13. However, Architect Betancourt's report affirmatively identifies the standards that support her conclusion. The report begins by identifying the applicable building codes it cites to: the 1997 Uniform Building Code, the 2009 International Building Code, and the 2018 International Building code. ECF No. 34-1 at 2. The "analysis" section of the report then specifies the measuring tape and exact units of measurement used to evaluate the stairway. ECF No. 34-1 at 3. Next, the report explains how the measurements were conducted and further documented in the report. ECF No. 34-1 at 3. Finally, the report details findings per each component of the stairway and cites the applicable building code for that specific part of the stairway. ECF No. 34-1 at 4–10.

Accordingly, the report adequately identifies the standards used to support its conclusions, and therefore this argument cannot stand.

Fourth, Defendants argue that Architect Betancourt's report is inadequate in that it fails to apply the standards to the facts of the case. ECF No. 22 at 13. While Defendants correctly note that Architect Betancourt's report does not render an opinion on whether Ms. Mardones's fall was due to the building code violations, the report adequately applies its standards to the facts of the case in that the report is an evaluation of the stairway in which Ms. Mardones fell. Even though the report does not explicitly address causation, it is ultimately up to the jury whether it chooses to draw inferences relating to causation from Architect Betancourt's testimony at trial.

Fifth, Defendants claim that Architect Betancourt's report falls short in that it omits discussion of the basis for her opinions. Again, this argument is an inaccurate reflection of the report. The reports analysis is divided by the different components of the stairway. ECF No. 34-1 at 4–10. Each component's section states the applicable building code for that respective component, discusses the dimensions of that particular component, and finally concludes whether that specific component is compliant with the applicable building code. ECF No. 34-1 at 4–10. Therefore, Architect Betancourt's report adequately discusses the basis for her opinions. Because the court has denied all of Defendants' *Daubert* arguments, Plaintiffs have provided sufficient evidence to preclude summary judgment on the negligent design claim.

V.     CONCLUSION

Plaintiffs have presented sufficient evidence to which reasonable minds may differ. At the end of the day, a jury may find that the stairway was wet, or it may not; it may find that caution warnings were visible, or it may not; it may find that the stairway's design caused Ms. Mardones to fall, or it may not; it may find that Ms. Mardones was not paying attention

when taking the stairs, or it may not. However, these questions are not for this court to decide.

For the foregoing reasons, Defendants' motion for summary judgment is DENIED.

    IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of October, 2023.

                                                       s/Marcos E. López
                                                       U.S. Magistrate Judge